HOLMES, Judge.
The Circuit Court of Cullman County, after an ore tenus hearing, found the husband owed the wife $5,015.44 under a decree of divorce. The husband appeals and we affirm.
The dispositive issue is whether the decree of divorce and the evidence support the trial court’s conclusion that the husband owes the wife $5,015.44 under the terms of the divorce decree. As indicated, we find the trial court’s finding to be so supported.
The parties were divorced in 1968. An agreement entered into by the parties regarding support was incorporated into the divorce decree. In pertinent part this agreement provided as follows:
The wife is the owner of a life insurance policy No. 833110 on the life of the husband in the principal sum of Fifty Thousand ($50,000.00) Dollars with a supplementary agreement, dated 1/3/64, covering additional indemnity for death by accidental means in the sum of Fifty Thousand ($50,000.00) Dollars and also *288 disability and also an agreement for level term insurance in the amount of Thirty Six Thousand ($36,000.00) Dollars, the premium for all of which is Two Thousand Four Hundred Eighty Four and 54/100 ($2,484.54) Dollars annually, which the husband agrees to pay as the same becomes due as additional alimony to the wife under the same terms and conditions as set forth relating to the payment of alimony in paragraph 3 hereof.
Thereafter in 1978, the wife filed with the trial court what is styled a “Citation For Contempt.” She alleged that the husband was in arrears in his alimony and that he failed to provide the necessary health insurance for the wife. Additionally, the wife alleged, in regard to the insurance policy No. 833110 referred to hereinabove, that the husband had failed to pay the premiums as required; that in view of his failure to pay the premiums, the premiums were paid by the policy reserves; that she had been forced to convert the policy into cash, and that the husband was therefore indebted to her.
It was stipulated at trial that the husband was in arrears regarding alimony and that he had failed to provide the necessary health insurance. It was further stipulated that the trial court would determine the “equities” between the parties regarding insurance policy No. 833110.
The trial court found that the aforesaid insurance policy was a part of the “alimony agreement” between the parties. The following are additional pertinent findings by the trial court:
The parties were divorced on March 16, 1968 and at the present time Mrs. Ratliff is 57 years of age and Mr. Ratliff is 64 years of age. The parties had a lengthy agreement in the file dividing their extensive real and personal property holdings that further provided alimony to be paid by the plaintiff to the defendant in the amount of $300.00 per month.
The defendant is now in involuntary bankruptcy without discharge and the referee has allowed this action to proceed in this court as shown by plaintiff’s Exhibits 5 and 6 filed therein.
[[Image here]]
This Court holds from all the evidence that the insurance policy was a part of the alimony agreement entered into by the parties.
Mr. Ratliff directed that premium loans be paid from the cash reserves in the policy as shown by the evidence in the total amount of $2,057.72 when he should have been making the premium payments in this amount from his own assets and thereby he deprived Mrs. Ratliff of twice this amount, first by reducing the cash reserve in the policy and then by not paying himself the premiums in the same amount on the policy.
There was evidence before the Court that the cash value of the policy, with withdrawals, would have been $17,068.00, enough to have paid premiums for about IOV2 years on a $50,000.00 whole life insurance policy with annual premiums of $1,168.00, which all would have occurred as shown by the evidence on January 3, 1979.
Mrs. Ratliff withdrew from the cash reserves of the policy on Loan $5,000.00 and she did not replace this amount and then Mrs. Ratliff cancelled the policy and received cash surrender value of $7,200.00 on February 1, 1978. This Court is faced now with doing equity between the parties on the cash surrender value of the policy, and is foreclosed to pursue remedies if she had taken any other course of action or had done nothing.
The trial court with the above in mind then entered the following:
Judgment is entered for the plaintiff, Thursa Ratliff, and against the defendant, James F. Ratliff, for $5,015.44 as alimony on the insurance policy, this amount being twice the automatic premium loans on direction of the defendant depleting the cash reserves of the policy and depriving the plaintiff of the amount that the defendant should have paid as premiums on the policy.
*289 On appeal, the husband contends that the trial court erred when it awarded the wife twice the amount of the premium loans which were made to fund the policy. Specifically, the husband contends that this ar-rearage in alimony, i. e., the unpaid premium loans, was approximately $2,057 and consequently the trial court’s award of $5,015 was unjust in that it is twice the amount of the arrearage which was owed.
At the outset, we note that there is evidence to support the learned trial court’s factual findings. We would further note that it is clear that the payment of the insurance premiums was alimony to the wife. The agreement so states.
It is equally clear that a court of equity in a case such as the instant appeal has power to use any reasonable means to adjust the equities between the parties. 8 Ala.Digest Divorce @=249(1).
While the findings and conclusion, which we have set out in detail, of the learned trial court were not necessarily required, we cannot say that his adjustment of the equities between the parties was so unreasonable as to require reversal. Put another way, this court should not be understood as necessarily agreeing with the learned trial judge’s conclusion that the husband owed “twice” the premiums. We simply find that in view of the husband’s action regarding the insurance policy and the trial court’s duty to interpret the agreement in light of the husband’s default and the trial court’s further duty to adjust the equities, we cannot say the trial court erred to reversal.
If a judgment or decree correctly determines the equity of a case, the reasons on which the trial court proceeded are unimportant and the judgment will be affirmed. See Bryant v. Moss, 295 Ala. 339, 329 So.2d 538 (1976).
The case is due to be affirmed.
AFFIRMED.
WRIGHT, P. J., and BRADLEY, J., concur.