SCRUGGS, Retired Circuit Judge.
This is a divorce case. The present issues generally concern a division of the property of the parties and the amount of the wife’s periodic alimony.
No assets were brought into their 1951 marriage by either party. They are childless, are now in their mid to late forties, *1010 and presently enjoy good health. The separation and divorce in 1980 were occasioned by their incompatibility of temperament.
The husband has worked throughout the marriage. In 1975 he and two others entered into the farm equipment business, and he and his brother each currently own one-half of its capital stock. His only income is derived from that business and from interest on savings. In 1980, he drew as a salary from the business a net of $320 per week and further received an annual bonus of $5,000. On his 1979 state income tax return, his total income was stated to be $37,194. Because of present economic conditions, he testified that his business is now in a shaky fiscal posture. His partial list of his personal monthly expenses, excluding clothing and miscellaneous matters, totalled almost $700, including one-half of the house. mortgage payment.
The wife was employed full time for eight years during the marriage, but in 1980 she only worked for two days per week because of her necessary attention directed to her 93-year-old father. The record is not clear as to when she worked full time nor for how long she has worked part time. Her take-home salary is $145 per week, to which could be added $10 which is voluntarily deducted from her wages as credit union savings. Her income consists of her salary and interest receipts from savings. Her total income of $8,530 was reported on the 1979 state income tax return. Her listed monthly personal expenses, plus $58.75 as one-half of the home monthly mortgage payment, amounted to around $780.
The only real estate which was accumulated by the parties was their jointly-owned house and lot. A balance of $12,000 was owned upon the first mortgage on the house, and over $240,000 against it remained unpaid upon a second mortgage, which was given to partially secure a business loan for his corporation. The court awarded to the wife the use of the home until she moved from it or remarried, at which time it would be sold and the net proceeds divided, with the wife receiving sixty percent and the husband forty percent thereof. Each party is required to pay one-half of the home’s taxes, insurance, upkeep and of its first mortgage monthly payments. The husband has to be responsible for the payment of the second mortgage.
Additionally, the divorce judgment granted the following to the wife: all household goods and furniture, a 1976 Oldsmobile automobile, an antique 1949 Ford pickup truck, all life insurance policies upon her life, and a United Federal Savings and Loan (UFS&L) certificate in the unencumbered amount of $27,199. As to that certificate, in 1972 or 1973 she received $6,800 from her father, which she invested in a savings certificate along with the further sum of $3,000, which she had saved' from her employment. The certificate has accumulated interest apparently since its inception. While the evidence is most cloudy as to the origin of the balance of the funds constituting that certificate, it could be reasonably interpreted that such balance came from the husband’s funds. The money which each of them earned over the years was commingled in their savings. She was directed by the divorce judgment to assume a debt of $1,400, which was borrowed for the benefit of her nephew.
The farm equipment business was granted to the husband, who testified that its liabilities almost exceeded its assets. He also received a 1973 mobile home in which he currently resides and for which he owes $4,000, and was allowed to retain his one-half interest in a mobile home where the wife’s father resides. Further awards to him were a 1971 MGB automobile; a 1969 fifteen-foot boat, motor and trailer; all life insurance policies which insure his life; eleven shares of Liberty National stock; and the following UFS&L certificates: a certificate for $13,569 with a $5,969 loan against it, a certificate for $10,000, and a certificate for $16,966 against which there is a loan of $10,708. He was further awarded two passbook savings accounts totalling $429. In addition to other debts which have been previously mentioned, he was held responsible by the judgment for the debt upon his mobile home and for all loans *1011 against UFS&L certificates which he was awarded.
The husband was ordered to pay $400 each month to the wife as periodic alimony.
Regarding the $27,199 certificate, the wife contends that the trial court abused its discretion since it did not consider that some, if not all thereof, constituted her separate funds and that the trial court awarded to the husband some of her cash. Particular reliance is placed upon Foster v. Foster, 365 So.2d 1227 (Ala.Civ.App. 1978); however, the facts there and here are materially different. In Foster, it was declared to be error to award to the husband $6,500 from the wife’s savings account, which was her separate estate. In the present case the husband was not awarded any portion of that particular certificate, which is the only certificate which the wife claims to have been a part of her separate estate. To the contrary, all of it was granted to the wife. There is nothing in the record or in the judgment to indicate that, in making the property divisions, the trial court did not give due and proper consideration to that matter by excluding from its consideration in dividing the property such portion of the certificate as that court determined constituted a portion of the wife’s separate estate. The trial court also could have taken into account the fact that their UFS&L invested funds were commingled by the parties. We find this particular contention of the wife to be without merit.
The other issues concern whether the trial court abused its discretion as to the amount of the award of periodic alimony, and, generally, whether there was an inequitable property distribution, especially in not awarding the home absolutely to the wife.
The evidence was heard orally by the trial court, and its findings as to alimony and as to a division of property are, consequently, presumed to be correct and can be set aside on appeal only if they are palpably wrong. The award of alimony and the proper division of the property of the parties lie within the sound judicial discretion of the trial court, which is reviewable only for abuse thereof. The division of property in a divorce case may be disproportionate and unequal; however, it should be equitable. Coffelt v. Coffelt, 390 So.2d 652 (Ala.Civ.App. 1980); Keleher v. Keleher, 389 So.2d 1160 (Ala.Civ.App. 1980); Hicks v. Hicks, 387 So.2d 207 (Ala.Civ.App.), cert. denied, 387 So.2d 209 (Ala.1980); Lindsey v. Lindsey, 380 So.2d 880 (Ala.Civ.App. 1980); Bouler v. Bouler, 366 So.2d 290 (Ala.Civ.App. 1979); Godec v. Godec, 346 So.2d 459 (Ala.Civ.App. 1977); Dickson v. Dickson, 57 Ala.App. 732, 331 So.2d 740 (1976).
We have carefully considered all of the trial evidence, and the record discloses nothing to persuade us that the trial court abused its discretion or rendered an inequitable judgment. The final judgment of the circuit court is affirmed.
The foregoing opinion was prepared by retired circuit judge Edward N. Scruggs while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e) of the Code of Alabama (1975), and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.